Michael MOREL, Petitioner,

v.

Janet RENO, Attorney General of the United States, Doris Meisner, Commissioner, Immigration and Naturalization Service, J.T. Watson, Officer in Charge, Immigration and Naturalization Service, Reno, Nevada, Respondents.

No. CV–N–98–685–ECR(RAM).

United States District Court, D. Nevada.

Dec. 10, 1999.

Richard D. Fleisicher, Janes J. Kelly, Reno, NV, for Petitioner.

Kathryn E. Landreth, U.S. Attorney, Shirley Smith, AUSA, Reno, NV, for Respondents.

## ORDER

EDWARD C. REED, Jr., District Judge.

Petitioner Michael Morel brings this action for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons given below, the court will grant the petition, unless certain conditions are met.

## BACKGROUND

Petitioner Michael Morel entered the United States in 1964 and has resided in the United States since that time with lawful permanent resident status. In 1976, Morel was convicted in the Second

Judicial District for the State of Nevada on the charge of sale of a controlled substance (marijuana) in violation of NRS 453.321. In 1993, the Immigration and Naturalization Service (INS) issued an Order to Show Cause charging Morel with deportability based on his state law drug conviction.

At the preliminary hearing before an Immigration Judge, Morel appeared, with counsel, and denied deportability. Morel also stated his intention to apply for waiver of deportation under section 212(c) of the Immigration & Nationality Act (INA) were he found deportable.[1] After several changes of calendar, Morel appeared before the Immigration Judge on December 11, 1996. Based on the state law drug conviction, the Immigration Judge found Morel deportable; in addition, she determined that Morel was not eligible for wavier from deportation. The Immigration Judge issued an order of deportation. Morel appealed the order of deportation to the Board of Immigration Appeals (BIA). On October 28, 1998, the BIA dismissed his appeal.

During the pendency of the deportation proceedings against Morel, Congress passed two new statutes which significantly altered the INA. The Anti–Terrorism and Effective Death Penalty Act of 1996 (AEDPA) took effect on April 24, 1996. AEDPA § 440(d) makes certain aliens ineligible for § 212(c) relief; namely, those aliens found deportable based upon their having committed certain crimes, including offenses involving controlled substances. After AEDPA was enacted, the Attorney General issued an opinion which held that AEDPA § 440(d) applies to even those deportation proceedings where an application for § 212(c) relief was pending when AEDPA was passed. *In re Soriano*, Interim Decision 3289 (February 21, 1997). The BIA expressly found Morel statutorily ineligible for § 212(c) relief based upon the application of AEDPA § 440(d). In the present habeas petition, Morel argues that he has been unfairly denied the opportunity to petition for discretionary relief under INA § 212(c) based on the retroactive application of AEDPA § 440(d), not in effect at the time of his conviction.[2]

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) took effect on September 30, 1996. IIRIRA substantially restricts judicial review of deportation orders and prohibits judicial review of certain discretionary decisions of the Attorney General. The government takes the position that IIRIRA has divested the courts of habeas jurisdiction under 28 U.S.C. § 2241; therefore, the government argues that the court lacks jurisdiction to hear the present petition.

**LEGAL STANDARD**

To obtain relief under the general habeas corpus statute, 28 U.S.C. § 2241, Morel must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Morel is considered to be in custody for the purposes of the habeas statute because he is subject to a final order of deportation. *Nakaranurack*

1. Under INA § 212(c) [former 8 U.S.C. § 1182(c)], an alien admitted for permanent residence and subject to deportation by reason of a criminal conviction could apply to the Attorney General for discretionary relief if the term of imprisonment for the crime was less than five years. INA § 212(c) was repealed by IIRIRA § 304(b).

2. Apparently, Morel argued in the administrative appeal that the Immigration Judge had erred "because her ruling was under the new law" and Morel "was under the old law at the time of conviction in June, 1993." Return, Ex. K. Morel was convicted on the state law drug charge in 1976. He was served with the Order to Show Cause regarding deportation in June, 1993. Thus, it is difficult to determine whether Morel means to argue that the application of § 440(d) was impermissibly retroactive with respect to his 1976 drug conviction, or with respect to the 1993 initiation of deportation proceedings against him. The court will focus on the latter, stronger, argument.

*v. United States,* 68 F.3d 290, 293 (9th Cir.1995).

## DISCUSSION

The Immigration Judge found that Morel was not eligible for § 212(c) relief, and therefore did not allow Morel to submit an application for waiver. Morel challenges the application of AEDPA § 440(d) to deny him the opportunity to have his request for § 212(c) relief considered by the immigration authorities as an impermissibly retroactive application of the statute.

The government responds that IIRIRA limits judicial review of orders of deportation or exclusion to appellate review of the final order and precludes district court consideration of petitions for writ of habeas corpus under the general habeas statute, 28 U.S.C. § 2241. In addition, the government argues that should Morel's petition be considered on the merits, it ought to be denied, based on the fact that Morel did not have pending an application for § 212(c) relief when AEDPA was enacted. Finally, the government argues that the court should defer to the Attorney General's decision in *Soriano,* which held that § 440(d) applies to immigration cases pending at the time AEDPA was enacted.

### 1. Subject matter jurisdiction

IIRIRA does not apply to those cases where a final order of deportation was issued prior to April 1, 1997. Interim transitional rules govern those immigration proceedings which were pending on the date IIRIRA became effective, April 1, 1997, and in which a final deportation or exclusion order was entered after October 30, 1996. IIRIRA § 309(c)[3]; *Hose v. INS,* 180 F.3d 992, 995 (9th Cir.1999) (en banc). Finally, the permanent rules of IIRIRA apply to all cases where deportation or exclusion proceedings commenced after April 1, 1997. IIRIRA § 309(a).

In this case, the INS initiated deportation proceedings against Morel on June 17, 1993. The Immigration Judge issued her deportation order on December 11, 1996. That deportation order became final on October 28, 1998, when the BIA dismissed the appeal of the order. Therefore, the transitional rules of IIRIRA govern the present case. The court must determine whether, under the transitional rules, habeas jurisdiction under § 2241 remains available for criminal aliens to challenge the lawfulness of their custody.

### A. Review of deportation and exclusion proceedings prior to the enactment of AEDPA and IIRIRA

Prior to 1952, habeas corpus had been the primary means by which aliens in federal custody could challenge immigration decisions:

> Aliens in custody of federal immigration officials have traditionally been able to obtain review of immigration decisions by petitioning for a writ of habeas corpus under what is now § 2241.... Habeas corpus review remained the principal avenue for judicial oversight of immigration laws until the Supreme Court's decision to allow more expansive review of immigration decisions under the APA [Administrative Procedures Act], later codified in old INA § 106.

*Goncalves v. Reno,* 144 F.3d 110, 120 (1st Cir.1998). In 1952, Congress redirected most judicial review of exclusion and deportation matters to the courts of appeals. *See Shah v. Reno,* 184 F.3d 719, 721 (8th Cir.1999). Habeas review remained available under INA § 106(a)(10) [former 8 U.S.C. § 1105a(a)(10)] for those aliens held in custody under an order of deportation. In addition, aliens ineligible for habeas corpus relief under INA § 106(a)(10) could pursue habeas review under § 2241, despite statutory language barring all oth-

---

**3.** The transitional rules [IIRIRA § 309(c)] have not been codified; they can be found following 8 U.S.C. § 1101.

er review. *See Heikkila v. Barber,* 345 U.S. 229, 235–37, 73 S.Ct. 603, 97 L.Ed. 972 (1953).

Prior to the passage of IIRIRA, an alien subject to a final deportation order could seek judicial review of the order by bringing a petition for review in the appropriate federal court of appeals. An alien subject to a final exclusion order could seek judicial review of that order by bringing a petition for writ of habeas corpus in federal district court. IIRIRA repealed 8 U.S.C. § 1105a(b), which provided for habeas review of exclusion orders in the district court. *See* IIRIRA § 306(b). Instead, IIRIRA provides for judicial review of all final orders of exclusion or deportation, now termed orders of removal, in the courts of appeals. 8 U.S.C. § 1252(b)(2).

B. Judicial review under the transitional rules

The transitional rules vest jurisdiction to review orders of exclusion and orders of deportation in the courts of appeals. *See* IIRIRA § 309(c)(4)(A). In addition, the transitional rules eliminate several avenues of appeal; namely, appeal of certain discretionary decisions, including those under § 212(c), and appeal by aliens found inadmissible or deportable by reason of having committed certain crimes. *See* IIRIRA § 309(c)(4)(E) and (G). Finally, 8 U.S.C. § 1252(g) eliminates federal court jurisdiction over certain discretionary decisions of the Attorney General. Section 1252(g) applies to all claims, including those which arise from proceedings initiated prior to the enactment of IIRIRA. IIRIRA § 306(c)(1).

i) IIRIRA § 309(c).

Generally, the new rules under IIRIRA do not apply to those persons in exclusion or deportation proceedings prior to the April 1, 1997, effective date. IIRIRA § 309(c)(1). However, special rules with respect to judicial review of immigration decisions apply to those persons in exclusion or deportation proceedings before

April 1, 1997, where the final order of exclusion or deportation issues after October 30, 1997 (i.e., those persons subject to the transitional rules). IIRIRA § 309(c)(4) provides, in relevant part:

In the case in which a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this Act, notwithstanding any provision of the section 106 of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act) to the contrary—

. . . .

(G) there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(i) of such Act (as so in effect).

IIRIRA § 309(c)(4)(G). Therefore, criminal aliens who fall within IIRIRA § 309(c)(4)(G) may not appeal an order of exclusion or deportation to the court of appeals. In addition, IIRIRA § 309(c)(4)(E) provides that there shall be no appeal of discretionary decisions under sections 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act (as in effect on September 30, 1996).

ii) 8 U.S.C. § 1252(g).

IIRIRA eliminates federal court jurisdiction over claims by an alien that stem from the discretionary decision of the Attorney General to initiate removal proceedings, adjudicate cases, or execute orders of removal:

Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to

hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g). Section 1252(g) applies to all claims, including those claims brought by persons subject to the transitional rules. IIRIRA § 306(c)(1) directs that § 1252(g) shall apply "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." IIRIRA § 306(c)(1).

### iii) *Magana–Pizano v. INS.*

In the case at hand, the government had conceded that the court had habeas jurisdiction under the Ninth Circuit decision in *Magana–Pizano v. INS*, 152 F.3d 1213 (9th Cir.1998), *judgment vacated*, 526 U.S. 1001, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999). In *Magana–Pizano*, the Ninth Circuit examined 8 U.S.C. § 1252(g) and decided that its elimination of federal court jurisdiction over decisions of the Attorney General applied to the broad spectrum of immigration proceedings. The panel concluded that habeas corpus jurisdiction under 28 U.S.C. § 2241 must remain available to those aliens who have no other means of review. However, the Supreme Court vacated the judgment in *Magana–Pizano* and remanded the case to the circuit for reconsideration in light of *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). The Ninth Circuit is currently without controlling law on the question of the continued viability of § 2241 habeas review. The government now argues that the vacatur of *Magana–Pizano* indicates that habeas review under § 2241 has been eliminated under IIRIRA.

### iv) *Reno v. American–Arab Anti–Discrimination Committee.*

■ In *Reno v. American–Arab Anti–Discrimination Committee* (AADC), the Supreme Court examined the statutory language of 8 U.S.C. § 1252(g). The high court held that § 1252(g) has very narrow scope. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *AADC*, 119 S.Ct. at 943. Thus, § 1252(g) applies only to those discretionary decisions of the Attorney General, not all claims which relate to exclusion, deportation, or removal proceedings. The Supreme Court highlighted the fact that the measure seemed specifically designed to end attempts to constrain prosecutorial discretion by means of judicial review:

> Section 1252(g) seems clearly designed to give some measure of protection to "no deferred action" decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed.

*Id.* at 944. Clearly, § 1252(g) does not apply to final orders of deportation or exclusion; such orders do not involve discretionary determinations by the Attorney General, but rather adjudication. *See Pichardo v. INS*, 188 F.3d 1079 (9th Cir. 1999) (section 1252(g) does not deprive court of appeals of jurisdiction to review BIA decision that alien was inadmissible).

In *AADC*, the Supreme Court contrasted 8 U.S.C. § 1252(g) with another permanent provision of IIRIRA, 8 U.S.C. § 1252(b)(9). Section 1252(b)(9) narrows judicial review of all questions of law or fact arising from immigration proceedings:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). The Supreme Court noted that only 8 U.S.C. § 1252(g), not the broader permanent provision of 8 U.S.C. § 1252(b)(9), applies to claims which fall within the transitional rules.

> [O]nly § 1252(g), and not § 1252(b)(9) (except to the extent it is incorporated within § 1252(g)), applies to what § 309(c)(1) calls "transitional cases," that is, cases pending on the effective date of IIRIRA.... It performs the function of categorically excluding from non-final-order judicial review—even as to transitional cases otherwise governed by § 1105a rather than the unmistakable "zipper" clause of § 1252(b)(9)— certain specified decisions and actions of the INS.

*Id.* Since § 1252(g) does incorporate § 1252(b)(9), the three decisions or actions of the Attorney General identified in § 1252(g) may be considered on review, but only upon review of a final order of removal, and only if no other section operates to bar such review of a final order. This holds true for cases which come within the transitional rules as well. Thus, if the transitional rules bar review of a final order of exclusion or deportation (as with respect to certain criminal aliens), the specific discretionary decisions or actions of the Attorney General listed in § 1252(g) apparently may not be reviewed at all. The Supreme Court did not decide the question of habeas review under § 2241, however. *See id.* at 942 n. 7 (noting disagreement among courts of appeals on the issue).

C. Habeas jurisdiction under 28 U.S.C. § 2241

■ The case at hand does not fall within the parameters of § 1252(g). Morel has challenged the determination of the Immigration Judge, affirmed by the BIA, that he could not apply for § 212(c) relief. The determination of ineligibility does not implicate any decision of the Attorney Gener-

al to commence proceedings, adjudicate the case, or execute an order of deportation. Therefore, § 1252(g) does not operate to preclude jurisdiction over the present action.[4]

IIRIRA § 309(c)(4)(G) does apply to this case, however, because Morel fits the description of an alien deportable by reason of having committed a criminal offense covered in INA § 241(a)(2)(B) [former 8 U.S.C. § 1251(a)(2)(B), now 8 U.S.C. § 1227(a)(2)(B)]. Therefore, "there shall be no appeal permitted" of the order of deportation in question. Morel cannot appeal the decision of the Immigration Judge (or the decision of the BIA) to the court of appeals. Morel argues, however, that neither IIRIRA § 309(c)(4)(G), nor any other provision of IIRIRA applicable to transitional cases, bars habeas review under 28 U.S.C. § 2241. The court agrees.

Supreme Court precedent indicates that if Congress intends to repeal or restrict habeas jurisdiction in the federal courts, it must do so explicitly, with specific reference to the statute granting jurisdiction. In *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), the Supreme Court concluded that Title I of AEDPA, which amended 28 U.S.C. § 2244(b), did not eliminate the Supreme Court's original habeas jurisdiction under 28 U.S.C. § 2241 and 28 U.S.C. § 2254. In reaching this conclusion, the Supreme Court looked to the reasoning of *Ex Parte Yerger,* 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868), where it had upheld an act of Congress which expressly restricted appeal from claims on habeas brought by prisoners in state custody under the Judiciary Act of 1867. The Court found that the later restriction did not limit or otherwise impair appeal from claims on habeas under the Judiciary Act of 1789, applicable to prisoners in federal custody. The Supreme Court decision in *Felker* reinforced

---

4. The court does not decide whether, or to what extent, habeas review under § 2241 might be available for those aliens who seek

to challenge one of the discretionary determinations compassed by section 1252(g).

the long-standing judicial doctrine which disfavors legislative repeal of jurisdictional statutes by implication.

*Felker* makes clear that any repeal of general habeas jurisdiction with respect to immigration cases must be explicit. While AEDPA § 401(e) did repeal habeas jurisdiction under 8 U.S.C. § 1105a(a)(10), it did not expressly alter or amend 28 U.S.C. § 2241. Rather, it refers specifically to § 106(a) of the Immigration and Nationality Act [former 8 U.S.C. § 1105a(a) ]. In addition, neither IIRIRA § 309(c) nor 8 U.S.C. § 1252(g) contains any reference to 28 U.S.C. § 2241. In fact, not one provision of AEDPA or IIRIRA contains· an express repeal of federal court jurisdiction under 28 U.S.C. § 2241.·

Moreover, 8 U.S.C. § 1252(e), part of the permanent rules of IIRIRA, specifically refers to habeas corpus proceedings. Since AEDPA § 440(e) repealed the specific grant of habeas jurisdiction in immigration cases found in 8 U.S.C. § 1105a(a)(10), and IIRIRA § 306(b) repealed the specific grant of habeas jurisdiction in exclusion cases found in 8 U.S.C. § 1105a(b),[5] 8 U.S.C. § 1252(e) must contemplate the continued availability of habeas jurisdiction under 8 U.S.C. § 2241. Clearly, neither AEDPA nor IIRIRA eliminated habeas jurisdiction entirely.[6]

The transitional rules of IIRIRA bar "appeal" by certain criminal aliens. It seems clear that the limitation on appeal refers to traditional direct appeal of some lower decision, generally initiated by the filing of a notice of appeal or petition for review in the court of appeal. Review on habeas corpus, also termed collateral review, must be distinguished from the term "appeal". The two types of review have long been recognized as different proceedings. Congress must be presumed to know the difference. Therefore, the language of IIRIRA § 309(c)(4)(G) does not provide support for the argument that Congress meant to repeal general habeas jurisdiction under the transitional rules.

■ The court concludes that habeas corpus review under 28 U.S.C. § 2241 remains available under the transitional rules of IIRIRA, at least where 8 U.S.C. § 1252(g) does not apply. The majority of circuits that have considered the question of the continued availability of habeas corpus under § 2241 in immigration cases have reached the same conclusion. *Bowrin v. INS,* 194 F.3d 483, 1999 WL 957725 (4th Cir.1999); *Pak v. Reno,* 196 F.3d 666, 1999 WL 791660 (6th Cir. October 6, 1999) (deciding only that habeas under § 2241 remains available under transitional rules); *Requena–Rodriguez v. Pasquarell,* 190 F.3d 299 (5th Cir. September 15, 1999) (transitional rules); *Jurado–Gutierrez v. Greene,* 190 F.3d 1135 (10th Cir. August 19, 1999) (transitional rules); *Shah v. Reno,* 184 F.3d 719 (8th Cir. July 1, 1999) (transitional rules); *Mayers v. INS,* 175 F.3d 1289 (11th Cir.1999) (transitional rules); *Sandoval v. Reno,* 166 F.3d 225 (3rd Cir. January 26, 1999); *Henderson v. INS,* 157 F.3d 106 (2nd Cir. September 18, 1998), *cert. denied,* 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *Goncalves v. Reno,* 144 F.3d 110 (1st Cir. May 15, 1998), *cert. denied,* 526 U.S. 1004, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999). *But see LaGuerre v. Reno,* 164 F.3d 1035 (7th Cir. December 22, 1998) (holding that AEDPA § 440(a) bars habeas review for aliens subject to that section, but that constitutional claims

**5.** IIRIRA § 306(b) repealed 8 U.S.C. § 1105a in its entirety.

**6.** The foregoing construction of the statute avoids significant constitutional questions which would arise were the court to find that Congress had divested the federal courts of jurisdiction to hear petitions for writ of habeas corpus under 28 U.S.C. § 2241. Given that Morel would otherwise have no means of

review, an alternative construction would require an examination of the power of Congress to limit federal court jurisdiction under Article III of the United States Constitution, as well as the Suspension Clause, art. 1, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

can be raised on direct review). Several district courts within the Ninth Circuit which have considered the question after the vacatur of *Magana–Pizano* have also reached the same result. *See, e.g., Tan v. Reno,* 1999 WL 969643 (N.D.Cal. October 15, 1999) (habeas remains available under IIRIRA); *Alikhani v. Fasano,* 1999 WL 792400 (S.D.Cal. July 19, 1999) (same); *Mendoza–Guerra v. Reno,* 1999 WL 360748 (N.D.Cal. June 1, 1999) (same); *Mercado–Amador v. Reno,* 47 F.Supp.2d 1219 (D.Or. 1999) (same); *Diaz–Zaldierna v. Fasano,* 43 F.Supp.2d 1114 (S.D.Cal. March 16, 1999)(same). Cf. *Maldonado v. Fasano,* 1999 WL 343423 (S.D.Cal. May 21, 1999) (both 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(a)(2)(C) divest court of habeas jurisdiction under 28 U.S.C. § 2241).

The general habeas statute, 28 U.S.C. § 2241, directs that the writ may be granted where the petitioner is held in custody in violation of the United States Constitution, laws of the United States, or treaties of the United States.

> The writ of habeas corpus shall not extend to a prisoner unless—
>
> . . . .
>
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(c). Therefore, the court's habeas jurisdiction under § 2241 extends to claims based upon federal statute as well as constitutional claims. The court has subject matter jurisdiction over the petition.

**2. Application of AEDPA § 440(d) to pending proceedings**

██ The Immigration Judge below applied AEDPA § 440(d) to find Morel ineligible for § 212(c) relief. The decision of the Immigration Judge, and the later decision of the BIA, accord with the decision of the Attorney General in *Soriano.* The Attorney General had concluded that the bar to § 212(c) relief found in AEDPA § 440(d) applies to cases pending at the time AEDPA was enacted. Here, the gov-

ernment argues that the Attorney General decided *Soriano* correctly. The court finds that Congress did not intend for AEDPA § 440(d) to apply to pending cases, and therefore rejects this argument.

The First, Second, Third and Eleventh Circuits have carefully considered the question of the retroactive application of AEDPA § 440(d) and have all concluded that Congress did not intend that § 440(d) apply to pending cases. *Mayers,* 175 F.3d 1289 (11th Cir.); *Sandoval,* 166 F.3d 225 (3rd Cir.); *Henderson,* 157 F.3d 106 (2nd Cir.); *Goncalves,* 144 F.3d 110 (1st Cir.). *See also Pak,* 196 F.3d 666, 1999 WL 791660 (6th Cir.) (reaching same conclusion); *Shah,* 184 F.3d 719 (8th Cir.) (same). The court finds persuasive the reasoning set forth in the primary cases cited above. The explanation that follows will not reiterate the fine analysis in the cases cited, but will simply highlight those points the court finds most compelling.

██ Supreme Court jurisprudence makes clear that while courts should generally apply the law in effect at the time of decision, statutes which have retroactive effect if applied to pending cases should not be so applied. See *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). More specifically, the longstanding and "deeply rooted" presumption against retroactivity applies where application of the statute would (a) impair rights the person possessed when he or she acted; (b) increase liability for past conduct; or (c) impose new duties with respect to transactions already completed. *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. Under *Landgraf* principles, therefore, where the statute in question would have retroactive effect, the presumption against retroactivity will govern, absent clear Congressional intent favoring such result. *Id.*

██ First, however, the court must determine whether Congress has given ex-

press direction as to the proper application of the statute within the statute itself. If so, the terms of the statute govern. If not, the court applies judicial tools of construction, including the presumption against retroactivity, in order to define the reach of the statute. *Id.*

ADEPA § 440(d) does not contain express language on the matter of retroactive application. However, other provisions of Title IV of AEDPA, which restricts relief from deportation for alien terrorists and other criminal aliens, do contain specific language. AEDPA § 413, for example, includes an explicit "effective date" provision, which states as follows:

> The amendments made by this section shall take effect on the date of the enactment of this Act and shall apply to applications filed before, on, or after such date if final action has not been taken on them before such date.

AEDPA § 413(g). If Congress had assumed that all sections of Title IV would apply to pending cases, it would not have been necessary to draft an express retroactivity provision with respect to § 413. Section 440(d) contains no direction as to an effective date. The absence of statutory language making § 440(d) applicable to all cases, past, present, or future, provides strong foundation for the argument that Congress did not intend for that section to have retroactive application. The general presumption against retroactivity should apply.

The legislative history of § 440(d) supports this conclusion. The original Senate version of the bill that later became AEDPA did contain express language stating that the amendments to § 303 of the Senate bill (which included the restriction on § 212(c) relief) would take effect on the date of enactment of AEDPA and would apply to cases pending before, on, or after the date of enactment. *See Goncalves,* 144 F.3d at 131–32. The House of Representatives passed its own bill restricting discretionary relief for alien terrorists and cretionary relief for alien terrorists and

aliens convicted of other crimes. Although it made retroactive the restrictions on discretionary relief for terrorists, the House bill did not contain an explicit "effective date" provision with respect to the section limiting discretionary relief for aliens convicted of ordinary crimes.

The bill that emerged from conference committee was eventually passed by both the Senate and the House. That bill contained the expanded definition of "aggravated felony" found in the House bill, and the restriction on relief for aliens convicted of crimes of moral turpitude, which had been in the Senate bill, but did not include the language of the original Senate bill which made those restrictions retroactive. The final legislation made § 413 retroactive but not § 440(d). Thus both the text of Title IV of AEDPA itself as well as the legislative history with respect to § 440(d) demonstrate that Congress did not intend for § 440(d) to apply to pending cases.

The government argues, first, that application of § 440(d) to deny Morel eligibility for § 212(c) relief did not work retroactive harm, because Morel did not have any right to relief from deportation. True, Morel did not have the right to discretionary waiver under § 212(c), and Morel cannot seriously be heard to argue that he would not have committed the crime which made him subject to deportation, had he known that the opportunity to apply for such relief would be denied him. However, at the time deportation proceedings were initiated against him, Morel had the statutory right to apply for waiver under § 212(c) and to have his petition considered.

> Analytically, the decision whether an alien is eligible to be considered for a particular discretionary form of relief is a statutory question separate from the discretionary component of the administrative decision whether to grant that relief.

*Goncalves,* 144 F.3d at 125. The elimination of an avenue of relief for which Morel

had the right to apply when proceedings were commenced against him clearly attaches additional burdens to past conduct. Hence, as applied to Morel, § 440(d) has retroactive effect.

Second, the government argues that the petition for habeas corpus must fail because Morel did not have an application for section 212(c) relief pending at the time AEDPA was passed. This argument ignores the fact that the Immigration Judge did not allow Morel to file an application for waiver because she had already determined that he was ineligible for relief under section 212(c). Morel had stated his intention to apply for such relief at an earlier hearing.

More significantly, Morel had the right to apply for waiver at the time deportation proceedings were commenced against him. The date proceedings were commenced, and not the date an application was filed, appears to be the critical date for the purpose of the present analysis. Often, persons seeking waiver under section 212(c) would not make application for relief until the hearing at which deportability would be determined, or after that determination had been made. The right to be considered for discretionary relief should turn on the time deportation proceedings were initiated (i.e., when an alien receives notice of the government's intention to seek removal), and not the vagaries of court calendars and attorney schedules.[7] The fact that Morel had not already filed an application for § 212(c) relief by the time AEDPA was enacted does not alter the finding that § 440(d) should not have been applied to pretermit his application.

## CONCLUSION

Congress did not intend for AEDPA § 440(d) to be applied in pending immigra-

tion cases. Therefore, the Immigration Judge erred in applying AEDPA § 440(d) to deny Morel eligibility for waiver from deportation under INA § 212(c). The denial of eligibility violated Morel's statutory right to have his petition for § 212(c) relief considered by the agency.[8]

Therefore, the petition for writ of habeas corpus *IS GRANTED* unless the Immigration and Naturalization Service, first, allows Morel to file an application for INA § 212(c) relief within thirty days of the date of entry of this order, and, second, gives due consideration to that application within sixty days after filing.

*IT IS SO ORDERED.*

The Clerk shall enter judgment accordingly.

---

7. AEDPA § 413 bars § 212(c) relief for alien terrorists; significantly, it applies to all cases where final action has not been taken on an application for relief before the effective date of AEDPA, whether the application was filed before, on, or after the effective date of AEDPA.

8. The court does not reach the equal protection claim that AEDPA § 440(d) unfairly differentiates between aliens in deportation proceedings and aliens in exclusion proceedings.