196 F.3d 666 (6th Cir. 1999)
 Jun E. Pak, Petitioner-Appellee,
v.
Janet Reno, Attorney General; Doris Meissner, Commissioner of INS; Immigration and Naturalization Service; Department of Justice; Robert Brown, District Ohio Director, INS, Respondents-Appellants.
 No. 98-3852
 UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
 Argued: June 17, 1999
Decided and Filed: October 6, 1999
 
 Appeal from the United States District Court for the Northern District of Ohio at Cleveland, No. 98-00740--Patricia A. Gaughan, District Judge.[Copyrighted Material Omitted]
 Lee Gelernt, American Civil Liberties Union Foundation, Immigrants' Rights Project, New York, NY, David W. Leopold, DAVID WOLFE LEOPOLD & ASSOCIATES, Cleveland, Ohio, for Appellee.
 Kathleen L. Midian, Asst. U.S. Attorney, Cleveland, Ohio, Richard M. Evans, David M. McConnell, Michelle R. Slack, Holly A. Gimbel, U.S. DEPARTMENT OF JUSTICE, IMMIGRATION LITIGATION, CIVIL DIVISION, Washington, D.C., for Appellants.
 Peter A. Joy, WASHINGTON UNIVERSITY SCHOOL OF LAW, St. Louis, Missouri, for Amicus Curiae.
 Before: JONES, COLE, and CLAY, Circuit Judges.
 OPINION
 R. GUY COLE, JR., Circuit Judge.
 
 
 1
 This case centers around the recent amendments to the Immigration Naturalization Act (INA), codified at 8 U.S.C. § 1182, et seq., that resulted from the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Specifically, the government appeals the district court's decision that it retained jurisdiction pursuant to 28 U.S.C. § 2241 to review a deportable alien's statutory claim that he was eligible for a waiver of deportation under INA §212(c). The government also appeals the district court's determination that AEDPA § 440(d) does not have retroactive application. For the reasons that follow, we AFFIRM the district court's decision in its entirety.
 
 I. BACKGROUND
 
 2
 Jun Pak, a citizen of South Korea, has been a legal permanent resident of the United States since 1976. On June 9, 1994, Pak was convicted in state court on several drug-related offenses. He was sentenced to three years' imprisonment to run concurrent with another sentence of four to fifteen years. In December 1994, the Immigration and Naturalization Service (INS) commenced deportation proceedings against Pak based on these convictions. Following a hearing before an immigration judge, Pak was found to be a "deportable" alien pursuant to 8 U.S.C. §1227(a)(2)(B)(i)[1].
 
 
 3
 In 1995, Pak requested a waiver of deportation pursuant to former INA § 212(c), codified at 8 U.S.C. § 1182(c). Section 212(c) permits the Attorney General to grant discretionary waivers of deportation to certain deportable aliens. While Pak's request for a waiver was pending, however, Congress passed AEDPA. Section § 440(d) of AEDPA rendered aliens convicted of certain crimes statutorily ineligible for § 212(c) discretionary waivers[2]. See INA § 212(c); 8 U.S.C. § 1182(c) (1996). Because Pak had been convicted of one of the enumerated offenses under §440(d), trafficking of a controlled substance, the immigration judge concluded that he was statutorily ineligible for a waiver under § 212(c) and dismissed his petition. Pak appealed the decision to the Board of Immigration Appeals (BIA). In accordance with the Attorney General's decision in Matter of Soriano, BIA Int. Dec. No. 3289, 1996 WL 426888 (Atty. Gen. Feb 21, 1997) (holding that § 440(d) of AEDPA applied retroactively to pending deportation cases), the BIA affirmed the immigration judge's order of deportation and held that Pak was statutorily ineligible for § 212(c) relief.
 
 
 4
 On March 30, 1998, one year after the BIA's decision, Pak filed a habeas corpus petition pursuant to § 2241, in which he challenged the BIA's decision that § 440(d) precluded him from seeking a discretionary waiver. Pak also claimed that §440(d) violated the Equal Protection Clause by affording discretionary relief for some aliens while denying it for others. In response, the government filed a motion to dismiss the petition in which it contended that the district court lacked subject matter jurisdiction to hear the matter. Specifically, the government asserted that Congress, by enacting AEDPA and IIRIRA, eliminated all avenues of judicial review for criminal orders of deportation, including habeas corpus review under § 2241. Any request for review of such orders, it argued, must be brought in the court of appeals and limited to issues of grave constitutional error, not errors of law, as Pak raises.
 
 
 5
 The district court denied the government's motion, finding that notwithstanding the amendments to the INA's judicial review scheme, district courts retained general habeas jurisdiction under 28 U.S.C. § 2241 to address not only constitutional errors but errors of law for those aliens precluded from seeking direct review of their deportation orders. The court then addressed the merits of Pak's claim, concluding that § 440(d) did not have retroactive application. In this timely appeal, the government challenges both the district court's decision as to its jurisdiction and the merits of Pak's claim.
 
 II. DISTRICT COURT'S JURISDICTION
 
 6
 We review questions of subject-matter jurisdiction de novo. See Friendsof Crystal River v. United States Envtl. Protection Agency, 35 F.3d 1073, 1077 (6th Cir. 1994). In order to provide an adequate framework for the parties' arguments, a brief description of the effect of AEDPA and IIRIRA on the basic structure of the INA is necessary.
 
 A. Statutory Changes
 
 7
 On April 24, 1996, President Clinton signed AEDPA into law. Shortly thereafter, on September 30, 1996, IIRIRA was enacted. Before the enactment of either statute, federal judicial review of deportation orders proceeded by a petition filed in the federal court of appeals. See 8 U.S.C. § 1105(a). Additionally, deportable aliens could seek review of their deportation orders by filing petitions for a writ of habeas corpus pursuant to INA §106(a)(10). The passage of AEDPA and IIRIRA significantly altered this scheme.
 
 
 8
 Most significant of these changes was the elimination of judicial review of final deportation orders for certain classes of criminal aliens. Specifically, AEDPA § 401(e) deleted the former text of § 106(a)(10),[3] and AEDPA § 440(a) substituted the following language in its place: "Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in [§]241(a)(2)(A)(iii), (B), (C), or (D) or any offense covered by [§] 241(a)(2)(A)(ii) for which both predicate offenses are covered by [§] 241(a)(2)(A)(I), shall not be subject to review by any court." We recently held that § 440(a) applied retroactively to petitions pending on the date AEDPA was enacted. See Figueroa-Rubio v. INS, 108 F.3d 110 (6th Cir. 1997). Because Pak's order was pending on the date of AEDPA's enactment, § 440(a) applies to his appeal.
 
 
 9
 IIRIRA further altered the judicial review structure of the INA through its permanent and transitional rules. IIRIRA's permanent rules do not apply to aliens who were in either deportation or exclusion proceedings before April 1, 1997, the effective date of IIRIRA's amendments. Instead, those orders are governed by the act's transitional rules. See IIRIRA §309.[4] One exception, however, is 8 U.S.C. § 1252(g),[5] which applies without limitation to claims arising from past, pending, or future exclusion, deportation, or removal proceedings. Notwithstanding § 1252(g), transitional cases are for the most part governed by the transitional rules found in IIRIRA § 309. Because Pak's deportation proceedings were initiated prior to April 1, 1997, his appeal is governed by these transitional rules.
 
 
 10
 Of particular importance to our analysis is IIRIRA §309(c)(4)(G), a transitional provision that places certain limitations on a criminal alien's right to appeal. Specifically, § 309(c)(4)(G) provides that:
 
 
 11
 [T]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of thedate of the enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(i) of such Act (as so in effect).
 
 
 12
 (emphasis added). Similar to AEDPA § 440(a), IIRIRA §309(c)(4)(G) eliminates appeals for aliens who are inadmissible or deportable by reason of having committed criminal offenses covered by §§ 241(a)(2)(A)(i)-(ii), (B),(C), or (D). This includes Pak. It is against this statutory backdrop that we must determine whether the district court retained jurisdiction under § 2241 to address Pak's habeas petition.
 
 B. Analysis
 
 13
 The government raises three arguments in support of its contention that the district court's exercise of jurisdiction over Pak's petition was improper. First, the government contends that Congress intended that § 1252(g) preclude the federal courts from hearing any claim arising from the Attorney General's decision to remove an alien from the United States, except when the alien files a timely petition for review in the court of appeals. Next, the government contends that the district court inappropriately reviewed Pak's claim because the plain language of IIRIRA § 309(c)(4)(G) precludes Pak from appealing his deportation order in any court. Finally, the government argues that the district court lacked jurisdiction under § 2241 to hear Pak's claim because AEDPA § 401(e) expressly repealed the grant of habeas jurisdiction set forth in INA § 106(a)(10). We will address each argument in turn.
 
 
 14
 We reject the government's contention that § 1252(g) insulates the BIA's decisions regarding deportation orders from review by any court other than the court of appeals. The Supreme Court has squarely rejected such an expansive reading of § 1252(g). See Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, -, 119 S. Ct. 936, 943 (1999)(AADC). In AADC, the Court held that § 1252(g) precluded judicial review of only the Attorney General's discrete acts of "commenc[ing] proceedings, adjudicat[ing] cases, [and] executing] removal orders." Id. "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." Id. at n.9. Thus, despite the fact that § 1252(g) forecloses review of certain interim discretionary decisions of the Attorney General, it does not preclude judicial review of final orders of deportations. See id. at 944; see also Mustata v. United States Dep't of Justice, 179 F.3d 1017, 1020-21 (6th Cir. 1999) (holding that §1252(g) was intended to preclude judicial review of the Attorney General's discretion to commence proceedings, adjudicate cases, or execute removal orders). To hold otherwise, the AADC Court concluded, would nullify IIRIRA § 309(c)(4)(G).
 
 
 15
 With respect to the government's second argument, the government is correct that the plain language of IIRIRA §309(c)(4)(G) eliminates ordinary appellate review of deportation orders for aliens convicted of certain offenses. Nonetheless, the government is wrong in its assertion that the elimination of ordinary appellate review encompasses habeas corpus review. The Supreme Court has long distinguished between judicial review of an appeal and "the courts' power to entertain petitions for writs of habeas corpus." Sandoval v. Reno, 166 F.3d 225, 235 (3d Cir. 1999) (citing Heikkila v. Barber, 345 U.S. 229, 235 (1953)). Throughout the history of immigration statutes, aliens without other recourse have traditionally been able to obtain review by habeas corpus, even in the face of statutory language precluding all other review. See Mayers v. INS, 175 F.3d 1289,1298 (11th Cir. 1999)[6]. In Heikkila, for example, the Court held that an alien could challenge his executive detention by filing a habeas petition even though the 1917 Immigration Act precluded judicial review. See 345 U.S. at 235. In so holding, the Court rejected the conclusions of several lower courts that judicial review included habeas corpus. See id. at 235-36. It follows then that § 309(c)(4)(G)'s foreclosure of appellate review does not extend to habeas jurisdiction pursuant to §2241[7]. Therefore, although we agree with the government that § 309(c)(4)(G) eliminated judicial review by any court of Pak's challenge to his deportation order, we conclude that §309(c)(4)(G) does not prevent Pak from seeking a writ of habeas corpus in the district court[8].
 
 
 16
 Equally unpersuasive is the government's contention that AEDPA's § 401(e)'s repeal of habeas jurisdiction under INA § 106(a)(10) also repealed general habeas jurisdiction under §2241. Although we have not yet addressed this issue, the majority of circuits that has done so has rejected the government's argument. See Jurado-Gutierrez v. Greene, 190 F.3d. 1135, 1145-46 (10th Cir. 1999); Shah v. Reno, 184 F.3d 719, 724 (8th Cir. 1999); Mayers, 175 F.3d at 1299; Sandoval 166 F.3d at 235; Henderson v. INS, 157 F.3d 106, 122 (2d Cir. 1998), cert. denied, 119 S. Ct. 1141 (1999); Magana-Pizano v. INS, 152 F.3d 1213, 1221 (9th Cir. 1998), judgment vacated and cert. granted, 119 S. Ct. 1137 (1999); Goncalves v. Reno, 144 F.3d 110, 121 (1st Cir. 1998), cert. denied, 119 S. Ct. 1140 (1999). But see Richardson v. Reno, 180 F.3d 1311 (11th Cir. 1999) (holding that § 2241 jurisdiction was precluded by IIRIRA's permanent rules); LaGuerre v. Reno, 164 F.3d 1035, 1040 (7th Cir. 1998) (holding that district court did not have habeas jurisdiction over aliens convicted of enumerated crimes), petition for cert. filed, No. 99-418 (Sept. 7, 1999).
 
 
 17
 In Goncalves, for example, the First Circuit rejected the identical argument raised by the government here, holding that the repeal of habeas jurisdiction under INA § 106(a)(10) did not affect district courts' jurisdiction under § 2241 to review habeas petitions of criminal aliens precluded from bringing direct appeals of their deportation orders in the court of appeals. See144 F.3d at 122. In so holding, the court relied on the Supreme Court's decisions in Felker v. Turpin, 518 U.S. 651 (1996) and Ex parte Yerger, 75 U.S. (8 Wall.) 85, 19 L. Ed. 332 (1869). Felker and Yerger, the First Circuit explained, adopted a general rule of construction that any repeal of the federal courts' historic habeas jurisdiction must be explicit and make express reference specifically to the statute granting jurisdiction. See id. at 120. Had Congress wished to eliminate habeas review under § 2241, it could have easily inserted an explicit reference to that provision. Because Felker was decided before IIRIRA was passed, Congress is presumed to be aware of the Court's holding that it cannot repeal habeas jurisdiction under § 2241 by implication,but only by express command. See Felker, 518 U.S. at 661. "[I]t is not only appropriate but realistic to presume that Congress was thoroughly familiar with these unusually important precedents from . . . federal courts and that it expected its enactment to be interpreted in conformity with them." Cannon v. University of Chicago, 441 U.S. 677, 696-97 (1979); see also United States v. Kassouf, 144 F.3d 952, 957 (6th Cir. 1998)(stating that Congress is presumed to know of prevailing law when enacting a statute).
 
 
 18
 We are persuaded by the reasoning in Goncalves. Although AEDPA § 401(e) pointedly refers to INA § 106(a)(10), it does not refer to § 2241. Thus, despite the fact that AEDPA §401(e) expressly repealed habeas jurisdiction under INA §106(a)(10), absent a clear statement from Congress, we decline to interpret that provision as also repealing general habeas jurisdiction under § 2241. See Mayers, 175 F.3d at1300. Therefore, we conclude that AEDPA's elimination of § 106(a)(10)'s grant of habeas corpus jurisdiction does not extend to eliminate federal habeas jurisdiction previously available under § 2241.
 
 
 19
 Additionally, we must note that our interpretations of IIRIRA § 309(c)(4)(G) and AEDPA § 401(e) "comport[ ] with our obligation to read statutes to avoid serious constitutional problems, such as those we would face were IIRIRA [and AEDPA] read to take away habeas jurisdiction." Sandoval, 166 F.3d at 237 (citing Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988)). Chief among those thorny constitutional issues we would be required to resolve is whether the IIRIRA and AEDPA amendments suspend the writ of habeas corpus in violation of the Suspension Clause of the Constitution. The Constitution mandates that the "Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I § 9, cl. 2. This mandate is not violated if habeas review or its equivalent is available. See Swain v. Pressley, 430 U.S. 372, 381 (1977) (stating that the Suspension Clause is not violated when there is the substitution of a remedy that is neither inadequate nor ineffective to test the legality of a person's detention). Were we to adopt the government's construction of IIRIRA §309(c)(4)(G) and AEDPA §401(e), we would be forced to determine whether the elimination of all review, including habeas review, violates the Suspension Clause given that there would be no alternative remedy available for Pak to test the legality of his executive detention. Furthermore, we would have to decide whether either statute violates constitutional limits on Congress's power to control the jurisdiction of Article III courts. Congress's power to limit the jurisdiction of Article III courts, although considerable, is not plenary. Considering these serious constitutional issues we would have to resolve were we to adopt the government's arguments, we choose to interpret the amendments to the INA as preserving access to the writ of habeas corpus under § 2241 for aliens in transitional cases. See Goncalves,114 F.3d at 122.
 
 
 20
 Today, we join the majority of circuits that have considered this issue and hold that habeas corpus jurisdiction under §2241 for criminal aliens whose petitions fall within the purview of IIRIRA's transitional rules survives enactment of AEDPA as modified by IIRIRA's transitional rules. See Jurado-Gutierrez, 190 F.3d 1135, 1145-46; Shah, 184 F.3d at 724; Mayers, 175 F.3d at 1299; Sandoval, 166 F.3d at 235; Henderson, 157 F.3d at 122; Magana-Pizano, 152 F.3d at 1221; Goncalves, 144 F.3d at 121.
 
 
 21
 C. Scope of Habeas Corpus Jurisdiction under § 2241
 
 
 22
 The government argues that even if district courts retain habeas jurisdiction pursuantto § 2241, habeas corpus review is unavailable to Pak for two reasons. First, § 2241 habeas jurisdiction can be exercised only to review substantial constitutional errors, not errors of law as Pak raises. Second, even if errors of law were cognizable under § 2241, Pak's claim is not reviewable because he is not challenging the legality of his detention, but raising a challenge to the Attorney General's refusal to exercise her discretion to grant a waiver. We are unpersuaded by either argument.
 
 
 23
 We can easily dispose of the government's first contention based on the plain language of §2241 alone. Specifically, the text provides that the writ of habeas corpus should extend to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3) (emphasis added). Thus, the plain language of §2241 does not limit its jurisdiction to constitutional claims.
 
 
 24
 The government's second argument is equally unpersuasive as it is merely an attempt to obfuscate the issue before us. Pak is not challenging the Attorney General's refusal to exercise her discretion. Rather, he is challenging her determination that she cannot legally exercise her discretion in his favor. "Analytically, the decision whether an alien is eligible to be considered for a particular discretionary form of relief is a statutory question separate from the discretionary component of the administrative decision whether to grant that relief." Goncalves, 144 F.3d at 125. Accordingly, the Supreme Court has historically permitted habeas corpus review of claims regarding a petitioner's eligibility for discretionary relief. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954) (holding that the BIA's refusal to consider an alien's request for discretionary relief in violation of statute or regulations is cognizable on habeas).
 
 
 25
 The government also suggests that should we choose to permit aliens to bring claims of statutory construction via a habeas petition, we should allow only those claims of statutory violations that result in a fundamental miscarriage of justice. See Yang v. INS, 109 F.3d 1185, 1196 (7th Cir.), cert. denied, 118 S. Ct. 624 (1997). We decline the government's invitation to import standards for habeas review in post-conviction cases into the analysis required for immigration cases because in contrast to executive detention cases, petitioners in post-conviction cases have already had substantial judicial review of their claims. Under the INA's "transitional" judicial review scheme, unless the writ of habeas corpus is available, no court, state or federal, is able to review a criminal alien's detention. "The pretension, by an official of the Executive Branch that someone can be imprisoned without review by any outside authority is one we are reluctant to accept." Shah, 184 F.3d at 724.
 
 
 26
 Accordingly, we hold that Pak's challenge to the retroactive application of AEDPA §440(d) is a matter that is properly reviewable under § 2241. We do not suggest that this habeas review is as broad as ordinary appellate review of final deportation orders. Rather, our holding is limited to transitional cases in which a criminal alien is precluded from seeking an appeal of his executive detention and subsequent deportation order.
 
 III. MERITS
 
 27
 We now turn to the merits of Pak's claim. As previously stated, AEDPA § 440(d) expands the class of aliens who are precluded from seeking a waiver under INA § 212(c)[9]. Because Pak wasdeportable under 8 U.S.C. 1251(a)(2)(B)(i), if § 440(d) applies to his appeal, he is ineligible for a waiver of deportation under § 212(c). In the Matter of Soriano, BIA Int. Dec. 3289, 1996 WL 426888 (Atty. Gen. Feb. 21, 1997), the Attorney General held that § 440(d) was fully retroactive and applicable to pending § 212(c) applications. In accordance with Soriano, the BIA affirmed the immigration judge's decision that under AEDPA § 440(d), Pak was ineligible for a § 212(c) waiver. The district court disagreed.
 
 
 28
 Relying on Chevron USA, Inc., v. Natural Resources Defense Council, 467 U.S. 837 (1984), the government urges us to defer to the Attorney General's decision in Soriano. Although we agree that Chevron generally requires us to defer to an agency's reasonable interpretation of its governing statute in the absence of an expression of congressional intent, see id. at 843-44, we do not believe that there is an absence of an expression of congressional intent in this case. Accordingly, deference to the Attorney General's opinion is not warranted with respect to this issue[10].
 
 
 29
 Chevron requires us first to ask whether Congress's intent is clear as to the precise question at issue. See id. at 842. If by "employing standard tools of statutory construction," id. at 843 n.9, we determine that Congress's intent is clear, "that is the end of the matter," id. at 842; see also Regions Hosp. v. Shalala, 522 U.S. 448, -, 118 S. Ct. 909, 915 (1998). It is only when a statute is silent or ambiguous that a court must determine whether an agency's interpretation is a permissible construction of the statute. See id. at 843. These standard tools of statutory construction used to determine Congress's intent include the familiar presumptions that are applied, including the presumption against retroactivity set forth in Landgraf v. USI Film Prods., 511 U.S. 244 (1994). See Goncalves, 144 F.3d at 127. "Generally, statutes should not be applied retroactively unless 'Congress has clearly manifested' its intent to do so." Mayers, 175 F.3d at 1302 (quoting Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 946 (1997)). Here, however, we need not rely on the judicial presumption against retroactivity because, applying traditional rules of statutory construction, we conclude that Congress intended that § 440(d) not apply retroactively, that is, not apply to pending applications for §212(c) relief.
 
 
 30
 Based on our examination of AEDPA, we note that Congress was explicit when it intended for particular provisions of AEDPA to apply to pending proceedings. For example, in AEDPA § 413, a provision that renders alien terrorists ineligible for several different forms of relief, Congress expressly stated that the provision would apply to pending applications. Section440(d), in contrast, does not contain a similar statement regarding retroactivity. By excluding retroactivity language from § 440(d) we presume that Congress did not intend for § 440(d) to apply to pending cases. See INS v. Cardoza-Fonseca, 480 U.S. 421, 432 (1987) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); see also Lindh v. Murphy, 521 U.S. 320, 325-26 (1997).
 
 
 31
 Our conclusion is well supported by the legislative history of § 440(d). The Senate version of AEDPA included an express provision making § 440(d) retroactive. See Sandoval, 166 F.3d at 241 (citing S. 735, 104th Cong. § 303(f) (1995)). A comparable section of the version of the bill introduced in the House did not contain retroactive language. See id. (citing H.R. 2703, 104th Cong. § 662 (1996)). The final bill dropped the language from the Senate's version that would have made § 440(d) applicable to pending § 212(c) applications. Ostensibly, Congress had considered a retroactivity provision but decided against it. With such strong evidence of congressional intent, we refuse to include in the language of the statute a provision that Congress chose to omit. "Few principles of statutory construction are more compelling than the proposition that Congress does not intend sub silentio to enact statutory language that it has earlier discarded in favor of other language." Cardoza-Fonseca, 480 U.S. at 442-43 (quoting Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 392-93 (1980) (Stewart, J., dissenting)). To allow the Attorney General's opinion to stand "would permit the executive branch to effectively thwart the intent of Congress, made plain through a careful reading of the statutory provision at issue." Goncalves, 144 F.3d at 127.
 
 
 32
 Accordingly, we agree with the district court's decision that § 440(d) does not apply to cases pending on the date AEDPA was enacted[11]. See Shah, 184 F.3d at 724; Mayers, 175 F.3d at 1300; Henderson, 157 F.3d at 128-30; Goncalves, 144 F.3d at 126-33; cf. Jurado-Gutierrez, 190 F.3d at 1148-52 (holding that AEDPA § 440(d) applies to cases in which the criminal convictions, but not the deportation proceedings, occurred prior to the passage of AEDPA).
 
 IV. CONCLUSION
 
 33
 For the foregoing reasons, we AFFIRM the district court's decision in its entirety.
 
 
 
 Notes:
 
 
 [1]
 Section 1227(a)(2)(B)(i) provides:
 (a) Classes of deportable aliens
 Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens:
 . . .
 (2) Criminal offenses
 . . .
 (B) Controlled substances
 (i) Conviction
 Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.
 
 
 [2]
 AEDPA § 440(d) provides:
 Classes of Excludable Aliens --Section 212(c) of such Act (8U.S.C. § 1182(c)) is amended --
 (1) by striking "The first sentence of this" and inserting "This"; and
 (2) by striking "has been convicted of one or more aggravated felonies" and all that follows through the end and inserting "is deportable by reason of having committed any criminal offense covered in section § 241(a)(2) (A)(iii), (B), (C), or (D), or any offense covered by §241(a)(2)(A)(ii) for which both predicate offenses are covered by §241(a)(2)(A)(i)."
 
 
 [3]
 The former text of INA §106(a)(10) provided that any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings.
 
 
 [4]
 Judicial review of transitional cases is governed by a petition for review procedure established by what some courts refer to as "old" INA § 106(a), 8 U.S.C. § 1105a(a). Section 106 consolidated review of final orders of deportation in the courts of appeals.
 IIRIRA § 309(c)(1) provides that proceedings pending prior to IIRIRA's effective date, including petitions for judicial review, would be conducted without regard to the IIRIRA amendments and in accordance with the prior rules.
 
 
 [5]
 Section 1252(g) provides:
 Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.
 
 
 [6]
 In Richardson v. Reno, 180 F.3d 1311, 1313 n.2 (11th Cir. 1999), the Eleventh Circuit made clear that Mayer applied to IIRIRA's transitional provisions and not to "post-IIRIRA law."
 
 
 [7]
 Our court has implicitly recognized that such a distinction between general habeas corpus and judicial or appellate review exists. In Mansour v. INS, 123 F.3d 423 (6th Cir. 1997), we declined to address the constitutionality of AEDPA § 440(a), which precluded judicial review of final orders of deportation of certain classes of criminal aliens, because we presumed that habeas jurisdiction was still available to address the petitioners' claims. See id. at 426.
 
 
 [8]
 We also note that the government's argument that judicial review is available in the court of appeals for a transitional alien's claims of grave constitutional error is without merit as the plain language of §309(c)(4)(G) eliminates appellate review for all claims, including those of grave constitutional error.
 
 
 [9]
 IIRIRA § 304, adding new INA § 240A, codified at 8 U.S.C. §1229b, consolidates "suspension of deportation" relief and aspects of the former § 212(c) relief into a new form of relief called "cancellation of removal" which restores discretionary relief for aliens who are deportable because they have committed two or more crimes involving moral turpitude under INA §237(a)(2)(A)(II). Cancellation of removal relief, like § 212(c) relief before AEDPA, applies to all aliens whose criminal convictions do not qualify as aggravated felonies. Because this provisions falls under IIRIRA's permanent rules and not its transitional rules, Pak is not eligible for this form of relief.
 
 
 [10]
 It is uncertain whether Chevron applies in this case, even if there had been an absence of an expression of congressional intent. "Chevron appears to speak to statutory interpretation in those instances where Congress delegated rule-making power to an agency and thereby sought to rely on agency expertise in the formulation of substantive policy." Sandoval, 166 F.3d at 239. Determining a statute's temporal reach, however, does not require agency expertise but, rather, presents a "pure question of statutory interpretation for the courts to decide." INS v. Cardoza-Fonseca, 480 U.S. 421, 446 (1987); see also Sandoval, 166 F.3d at 239-40; Goncalves, 144 F.3d at 127. Accordingly, some courts advance the position that this determination may be made "without affording any deference to the Attorney General." Jurado-Gutierrez, 190 F.3d at 1148; see also Sandoval, 166 F.3d at 236; Goncalves, 144 F.3d at 127.
 
 
 [11]
 This decision makes it unnecessary for us to decide whether AEDPA § 440(d) violates the Equal Protection Clause.