**Zulema ARBOLEDA, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

No. 00–4027.

United States Court of Appeals,
Sixth Circuit.

Nov. 5, 2002.

Before NELSON, CLAY, and
GARWOOD, Circuit Judges.*

---

* The Honorable William L. Garwood, United
States Circuit Judge for the Fifth Circuit, sit-
ting by designation.

GARWOOD, Circuit Judge.

Zulema Arboleda ("Arboleda") appeals the Board of Immigration Appeals's dismissal of her appeal from the denial of her application for asylum or withholding of deportation. She also appeals the Board of Immigration Appeals' denial of her motion to remand to introduce further documentary evidence. The evidence in the record does not compel the contrary result, and the motion to remand was properly denied. We therefore affirm.

## Background

Zulema Arboleda is a native of Peru who entered this country on January 10, 1991 as a nonimmigrant visitor for pleasure. In May of that year, she submitted pro se an application asking for asylum because "I losed my job already, and the economic and political situations are dangerous and because the communist." In the box asking if she applied for asylum in any other country, she checked the box for "no" and explained that "I didn't know that I'll be in this situation with out money and I can't work with the visa I have." Arboleda also checked boxes that certified that neither she nor any member of her family had been a member of any organization in her home country; that she did not believe she had taken actions that would expose her to persecution in her home country; that she had never been detained, interrogated, convicted, or imprisoned; that the conditions in Peru did not affect her more than any other Peruvian; and that neither she nor any member of her family had been mistreated by the authorities of her country. Arboleda added that she had been working for the mother of a friend of hers, but lost that job when the mother died.

On June 28, 1995, the INS issued an Order to Show Cause why she should not be deported for overstaying her six-month visa. At a hearing on March 28, 1996, Arboleda conceded her deportability but stated her intent to renew her application for asylum or withholding of deportation. On April 12, 1996, Arboleda filed a second application for asylum with the help of her attorney. In this second application, Arboleda checked the boxes claiming that she or a member of her family had been affiliated with an organization and that she or a member of her family had been mistreated by the authorities because of political opinion. In her attached statement, Arboleda elaborated that her father had been an official in the Partido Abrista for many years before his accidental death in 1965, and had lived under threats so severe he was forced to hide in the woods. She further claimed that her mother's clothing store was closed because of harassment from terrorists whom she believed to be from the Shining Path. She alleged her brother-in-law was kidnapped by these same terrorists.

The application was heard before an immigration judge on November 18, 1997. At the hearing, Arboleda explained that her father was a schoolteacher and principal. To avoid the dangerous situation her father was in, her family moved to Lima where her father became the head of his political party. Arboleda described her father's car accident and for the first time implied foul play by testifying that he was the only one who died and that the driver changed his story regarding how the accident had occurred. After her father's death in 1965, Arboleda testified, her family had to live in a storefront which her mother turned into a children's clothing business. Her mother had to close the shop in 1989 because a "group" came to the store every year and demanded all the money. Her mother tried various tricks to

fool the group, but they backfired and Arboleda's brother-in-law was kidnapped. The group ransacked Arboleda's sister's house and wrote political slogans on the wall. Arboleda said that she feared returning to Peru because of that group; she felt they were watching her sister and brother-in-law because of her father's reputation, her mother's refusal to pay, and the fact that her brother is named for his father. She could not identify the group to the immigration judge, remembering only "Shining" and not "Path."[1] When challenged about the conflict between her sworn claim that her father's death was accidental and her testimony at the hearing voicing suspicion about the circumstances, Arboleda claimed that the error was because she was newly arrived in America. The sworn statement had been made in her *second* application for asylum, filed in 1996. She claimed that she said that no member of her family had ever belonged to an organization in her first application for asylum "because [her] father was deceased already." She also claimed that the first application said that her family had never been mistreated by the authorities because they never reported the incidents to the police.

After considering this testimony, the immigration judge held that Arboleda had failed to meet her burden to prove that she was a "refugee" and thus entitled to asylum. Key to the judge's decision was a finding that Arboleda lacked credibility, based on the inconsistencies between the first application, the second application, and the court testimony. The judge then added that even if Arboleda had been credible, the facts to which she testified would not justify asylum because the political oppression was too remote. The judge

therefore denied the application for asylum and withholding of deportation, but offered Arboleda the privilege of voluntary departure.

Arboleda filed an appeal with the Board of Immigration Appeals ("BIA"), and then filed a motion to remand to reopen her case to introduce documentary evidence of her father's political affiliations. The BIA affirmed the decision of the immigration judge on July 27, 2000, holding that Arboleda's lack of credibility went to the heart of her claim and justified the dismissal of her appeal. The BIA also denied the motion to remand without discussion. The present appeal followed.

## Discussion

### I. The Decision of the BIA Is Substantially Reasonable

The appellant first contends that the BIA's decision to dismiss the appeal was in error. Because the order of deportation was entered after October 31, 1996 and the deportation proceedings began before April 1, 1997, we review this appeal under 8 U.S.C. § 1105a as modified by the transitional rules set forth in section 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").[2] *See Pak v. Reno*, 196 F.3d 666, 670 (6th Cir.1999); *Mustata v. U.S. Dept. of Justice*, 179 F.3d 1017, 1020 (6th Cir.1999). In reviewing the BIA's deportation order, our review is limited to the administrative record and the BIA opinion; "the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive." *See* 8 U.S.C. § 1105a(a)(4) (1995). All this so-called "substantial evidence" standard requires is

---

1. Arboleda was unable to remember any part of their Spanish name.

2. Pub. L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), *as amended by* Act of Oct. 11, 1996, Pub. L. No. 104–302, 110 Stat. 3656.

"that the BIA's conclusion, based on the evidence presented, be substantially reasonable." *Klawitter v. INS*, 970 F.2d 149, 151 (6th Cir.1992). The BIA's denial of asylum can be reversed only if the evidence presented by the alien "was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992). "[T]o reverse [a] BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it." *Id.* at 815 n. 1 (emphasis in original). The standard applied to asylum claims is more generous than the standard for withholding of deportation. *Ivezaj*, 84 F.3d at 221. We will therefore apply this "substantial evidence" standard of review to the appellant's claim that she should have been granted asylum.[3]

■ The BIA dismissed the appeal because it found the immigration judge had justifiably found that Arboleda lacked credibility,[4] and therefore had not carried her burden of showing she was a victim of past persecution, has a well-founded fear of persecution, or faces a clear probability of persecution in Peru on account of a protected ground. *See* 8 U.S.C. § 1101(a)(42)(A). We find that the BIA's conclusion that Arboleda lacked credibility is substantially reasonable. There are significant differences between the appellant's

two sworn applications for asylum. The appellant's first application for asylum shows few (if any) political concerns and no fear of persecution. Her second application raises allegations of political oppression and fear of returning, which both contradicts her earlier sworn statement and suggests that she tailored her story once she discovered that she could only receive asylum for certain narrowly defined reasons. Moreover, her second application contained the sworn contention that her father died accidentally, but her testimony at the hearing contradicted that assertion. Finally, we note that her explanations for these variations were not persuasive and were occasionally erroneous. These contradictions make the BIA's opinion substantially reasonable, and we find no evidence that compels the contrary conclusion. The appellant has not met her heavy burden, and thus we affirm the BIA's decision to dismiss her appeal.

## II. The BIA Did Not Abuse Its Discretion By Refusing To Remand To Reopen

The BIA analyzed Arboleda's appeal under the standard for testimony of an asylum applicant unsupported by corroborating evidence. At the same time, the BIA denied the appellant's motion to remand to reopen so that she could introduce evidence she claims corroborated her claims

---

**3.** The INS urges that an adverse credibility determination must be reviewed for abuse of discretion in this circuit, citing *Gumbol v. INS*, 815 F.2d 406 (6th Cir.1987) for that principle. In *Gumbol*, we recited the proper statutory standard set forth in 8 U.S.C. § 1105a(a)(4) and then referred to that standard as review for "clear abuse of discretion." *See Gumbol*, 815 F.2d at 408. The Supreme Court's subsequent exposition of section 1105a in *INS v. Elias–Zacarias*, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), is controlling. We review the Attorney General's findings of fact for substantial

evidence, a point candidly conceded by the INS in its brief.

**4.** We do not review the decision of the immigration judge, but instead are limited to reviewing the reasoning of the BIA. *See Anssari–Gharachedaghy v. INS*, 246 F.3d 512, 513 (6th Cir.2000). Accordingly, we need not address those portions of the immigration judge's opinion upon which the BIA did not rely, such as the immigration judge's opinion that the circumstances of Arboleda's father's oppression were too remote to justify asylum.

about her father's political involvement. Arboleda argues that the latter decision was in error, and this error in turn affects the correctness of the BIA's analysis. We disagree. The BIA properly denied the appellant's motion, and therefore applied the correct standard to her appeal.

The BIA did not explain why they refused the appellant's motion to remand,[5] but the BIA almost certainly determined either that the evidence was available at the time of the hearing or that Arboleda would not be entitled to relief even with the additional evidence introduced. Under either rationale, we review the BIA's denial for abuse of discretion. *See INS v. Doherty*, 502 U.S. 314, 112 S.Ct. 719, 725, 116 L.Ed.2d 823 (1992); *INS v. Abudu*, 485 U.S. 94, 108 S.Ct. 904, 912, 99 L.Ed.2d 90 (1988). Motions to reopen are within the "broad discretion" of the BIA and are "disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence." *Doherty*, 112 S.Ct. at 724 (citing *Abudu*, 108 S.Ct. at 913). "This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who merely wishes to remain in the United States." *Id.* at 724–25.

■ Arboleda's motion to remand was founded on her desire to introduce two pieces of evidence. The first was a document regarding her father's political affiliation. Arboleda's motion to remand candidly admits that this document was available to her at the time of the hearing, and therefore 8 C.F.R. § 3.2(c)(1) absolutely forbade the BIA to grant her motion. The BIA could not have abused its discretion by refusing to do what it had no power to do. We also note that Arboleda apparently had this document in her possession when she swore in her second application that her father's death was accidental, and thus she lessened its import through her own affirmation.

■ The second piece of evidence Arboleda sought to introduce was certain unspecified "additional political writings" by her father. According to her motion, these writings were not available at the time of her hearing and thus are not barred by 8 C.F.R. § 3.2(c)(1). It is not clear that her assertion of unavailability is correct, inasmuch as Arboleda has been in intermittent contact with her mother in Peru. We need not address that doubt, however, because in any event it was not an abuse of discretion for the BIA to deny her motion. Arboleda's appeal was dismissed by the BIA because she lacked credibility. The political writings would help to establish that her father had political credentials, but would not rehabilitate her inconsistent and implausible statements. The documents would not change the result in this case, and therefore the BIA did not abuse its discretion by refusing to remand to allow those documents to be entered into the record. We affirm the decision of the BIA on this point.

---

**5.** A motion to remand is proper before the order is final; a motion to reopen is proper after the order has become final. *See, e.g., Wang v. Ashcroft*, 260 F.3d 448, 451–52 (5th Cir.2001). Arboleda's motion would therefore best be called merely a "motion to remand" and not a "motion to remand to reopen." Nevertheless, a motion to remand must meet all the requirements of a motion to reopen and the two are treated the same. *Rodriguez v. INS*, 841 F.2d 865, 867 (9th Cir.1987); *Matter of Coelho*, 20 I. & N. Dec. 464, 9 Immig. Rptr. B1–218, 1992 WL 195806 (BIA 1992); CHARLES GORDON, ET AL., 1 IMMIGRATION LAW AND PROCEDURE § 3.04[4][i] (Rev. ed.). We will therefore call her motion a "motion to remand" without treating the name of the motion as having any consequence to this appeal.

### Conclusion

Arboleda's appeal was dismissed by the BIA because she lacked credibility, and the administrative record does not compel the opposite conclusion. The additional documents she sought to introduce through a motion to remand were either impermissible or essentially irrelevant. The decision of the BIA dismissing her appeal and denying her motion to remand is therefore AFFIRMED.