**Joseph NAOUM, et al. Petitioners**

v.

**ATTORNEY GENERAL OF THE UNITED STATES, et al.**
**Respondents**

**No. 1:03 CV 1240.**

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 8, 2004.

Richard H. Drucker, Cleveland, OH, for Plaintiffs.

Richard J. French, Assistant U.S. Attorney, Office of the U.S. Attorney, Northern District of Ohio, Cleveland, OH, for Defendants.

*MEMORANDUM OF OPINION AND ORDER GRANTING RESPONDENTS' MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS*

WELLS, District Judge.

Before this Court is respondent Bureau of Immigration & Customs Enforcement's [1] ("government") motion to dismiss Joseph Naoum's [2] petition for habeas corpus for the failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction. (Docket # 7). On 17 November 2003, Mr. Naoum filed an opposition brief. (Docket # 9). No reply was filed.

For the reasons set forth below, the government's motion to dismiss is granted.

## I. BACKGROUND

Petitioner, Joseph Naoum, was born in Lebanon on 26 January 1962. (Docket # 7, Ex. A). At the age of 5, he moved with his family to the United States and has been a permanent resident of the United States since 1968. (Docket # 7, Ex. O, at 2–3). He is married to Felice Naoum, a United States citizen, and has two children, Chady and Felice, who are also citizens of the United States. (Docket # 7, Ex. N, at 44–46 and 53–54).

Mr. Naoum is presently incarcerated and faces impending removal by the Bureau of Immigration and Customs Enforcement ("BICE") as a consequence of his history of criminal activity. On 21 May 1981, Mr. Naoum was convicted of petty theft, in violation of the City of Brooklyn, Ohio's Codified Ordinance Section 642.02. (Docket # 7, Ex. O, at 3). On 18 March 1986, Mr. Naoum was convicted of carrying a concealed weapon in violation of Ohio Revised Code Section 2923.12. *Id.* On 11 June 1993, Mr. Naoum was convicted of theft and forgery in violation of Ohio Revised Code Sections 2913.02 and 2913.31. Mr. Naoum was then convicted on 18 July 1994 of theft, in violation of Section 2913.02, and sentenced to a term of imprisonment of one year. *Id.* On 1 February

---

1. The Attorney General is not the petitioner's custodian for habeas corpus purposes. The correct respondent in this case is Barry Halfill, the interim resident agent-in-charge for the Bureau of Immigrations and Custom Enforcement in Cleveland. *Roman v. Ashcroft,* 340 F.3d 314, 318–322 (6th Cir.2003).

2. While the petition for habeas corpus also names Felice Naoum, Felicia Naoum, Chady Naoum, and Tanios Naoum as petitioners, it is Joseph Naoum who is actually seeking habeas relief.

1995, Mr. Naoum was convicted of breaking and entering with violent specifications, in violation of Section 2011.13, and theft, in violation of Section 2913.02, and was sentenced to a term of imprisonment of two and a half years. (Docket # 7, Ex. O, at 4).

The government initiated deportation proceedings against Mr. Naoum by the issuance of an order to show cause on 11 June 1994 explaining that he was subject to deportation pursuant to Sections 241(a) and 241(a)(2)(C) of the Immigration and Nationality Act ("INA") for two crimes involving moral turpitude and for his conviction of carrying a concealed weapon, respectively. (Docket # 7, Ex. C). At a 21 July 1995 hearing before Immigration Judge Fujimoto, Mr. Naoum admitted all seven of the factual allegations in the show cause order, including that he was not a citizen or national of the United States. (Docket # 7, Ex. G, at 9).

Following the initial service of the 11 June order, the government filed additional charges against Mr. Naoum under Section 241(a)(2)(A)(iii) of the INA as an aggravated felon. (Docket # 7, Ex. F). After a hearing, Immigration Judge Hacker found the new factual allegations listed in the government's additional charges to be supported by "clear, convincing and unequivocal evidence." (Docket # 7, Ex. O, at 3–4). She also found that the government's charges under Sections 241(a), 241(a)(2)(A)(iii) and 241(a)(2)(C) of the INA were sustained by the requisite standards of clear, convincing, and unequivocal evidence. (Docket # 7, Ex. O, at 4–5).

Mr. Naoum thereafter requested relief from deportation pursuant to Section 212(c) of the INA which allows any permanent resident alien with "a lawful unrelinquished domicile of seven consecutive years" to apply for a discretionary waiver from deportation. *I.N.S. v. St. Cyr*, 533

U.S. 289, 295, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). If the discretionary relief is granted, the deportation proceeding is terminated and the alien remains a permanent resident. *Id.* Though the Immigration Judge found Mr. Naoum eligible to seek the waiver, she ultimately denied his application for relief because of seriousness and significance of the negative factors in his case and the absence of evidence of rehabilitation. (Docket # 7, Ex. O, at 7 and 17). Having denied Mr. Naoum's application for a 212(c) waiver, she ordered him to be removed and deported from the United States to Lebanon. (Docket # 7, Ex. O, at 17).

Mr. Naoum filed a timely appeal of the Immigration Judge's decision with the Board of Immigration Appeals. (Docket # 7, at 3). On 17 July 2002, the Board of Immigration Appeals affirmed the Immigration Judge's decision. *Id.* Mr. Naoum appealed that decision to the United States Court of Appeals for the Sixth Circuit, which dismissed his petition finding that it lacked jurisdiction. (Docket # 1, at 5, and # 7, at 3).

Mr. Naoum filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on 20 June 2003. (Docket # 1). He bases his petition on three grounds for relief:

**GROUND ONE:** THE IMMIGRATION JUDGE AND BOARD OF IMMIGRATION APPEALS ABUSED THEIR DISCRETION WHEN THEY DENIED PETITIONER JOSEPH NAOUM RELIEF PURSUANT TO SECTION 212(c).

**GROUND TWO:** THE RESPONDENTS CANNOT REMOVE THE PETITIONER BECAUSE IT WOULD VIOLATIVE OF [SIC] SEVERAL INTERNATIONAL HUMAN RIGHTS TREATIES INCLUDING THE INTERNATIONAL COVENANT ON

CIVIL AND POLITICAL RIGHTS (ICCPR) AND THE CONVENTION OF THE RIGHTS OF THE CHILD (CRC) THAT PROTECT THE INTEGRITY OF THE FAMILY.

**GROUND THREE:** THE RESPONDENTS CANNOT REMOVE THE PETITIONER BECAUSE HE IS AN UNITED STATES CITIZEN.

(Docket # 1, at 10–14).

## II. LAW AND ANALYSIS

Mr. Naoum seeks relief from the deportation order pursuant to 28 U.S.C. § 2241. In 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), significantly altered the scheme by which deportable aliens could seek judicial review of deportation orders and/or habeas corpus relief. *Pak v. Reno,* 196 F.3d 666, 670 (1999). Notwithstanding these changes, deportable aliens may still seek habeas corpus relief pursuant to the general habeas statute, 28 U.S.C. § 2241. *INS v. St. Cyr,* 533 U.S. 289, 309–313, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Pak,* 196 F.3d at 673.

The government argues that Mr. Naoum is not entitled to relief on any of his enumerated grounds because they either fail to state a claim upon which relief can be granted or because this Court lacks jurisdiction to consider them. The Court considers Mr. Naoum's three grounds for relief in turn.

### A. Abuse of Discretion in Denying Mr. Naoum's Section 212(c) Waiver

■ Mr. Naoum contends that the Immigration Judge failed to properly analyze the evidence before her and abused her discretion in denying his application for Section 212(c) relief. (Docket # 1, at 10–13). The government responds, in part, that this Court lacks jurisdiction to review the Immigration Judge's decision for abuse of discretion when exercising habeas jurisdiction. (Docket # 7, at 10). Thus, before considering the merits of Mr. Naoum's abuse of discretion claim, this Court must determine whether Section 2241 habeas jurisdiction permits review of discretionary determinations by the executive branch.

In *St. Cyr,* the Supreme Court made clear that a court may, in exercising its habeas jurisdiction, answer "questions of law that arose in the context of discretionary relief." 533 U.S. at 307, 121 S.Ct. 2271. The Supreme Court did not expressly decide whether the scope of Section 2241 habeas review also includes the review of factual and discretionary determinations. *Id.* at 297, 121 S.Ct. 2271 (noting that St. Cyr's application raises a "pure question of law" and that St. Cyr was not asserting "any right to have an unfavorable exercise of the Attorney General's discretion reviewed in a judicial forum"). However, both *St. Cyr* and *Pak* suggest that courts do not have habeas jurisdiction to review the government's refusal to exercise its discretion in favor of Mr. Naoum. Both the Sixth Circuit and the Supreme Court have cautioned that habeas review is not as broad as ordinary appellate review of final deportation orders. *St. Cyr,* 533 U.S. at 314, 121 S.Ct. 2271; *Pak,* 196 F.3d at 674. Both courts, also, have emphasized the traditional distinction between "eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand," noting that their cases involved the former and not the latter. *St. Cyr,* 533 U.S. at 307, 121 S.Ct. 2271; *Pak,* 196 F.3d at 674.

Moreover, a habeas court's lack of jurisdiction to review discretionary decisions is consistent with the overall structure of the IIRIRA and its transitional rules. Because Mr. Naoum's deportation proceeding began prior to 1 April 1997, the IIRIRA's

transitional rules apply. *Valenzuela Alcantar v. I.N.S.*, 309 F.3d 946, 948 (6th Cir.2002). One such transitional rule provides that "there shall be no appeal of any discretionary decision under section ... 212(c) ... of the Immigration and Nationality Act." IIRIRA § 309(c)(4)(E), codified at 8 U.S.C. § 1101, note. In *Valenzuela Alcantar*, the Sixth Circuit, considering a very similar discretionary decision covered by the same transitional rule, held that review of that discretionary decision was barred. 309 F.3d at 950. Courts therefore lack jurisdiction to review an Immigration Judge's discretionary denial of a 212(c) waiver on appeal. Allowing such review in courts exercising habeas jurisdiction would render the purpose of the rule ineffective as it would simply shift the locus of that review.

Accordingly, the scope of this Court's Section 2241 habeas jurisdiction does not extend to the discretionary decision of an immigration judge denying relief under Section 212(c) of the INA.

## B. International Treaties

■ Mr. Naoum also argues that his deportation by BICE would violate two international treaties, the International Covenant on Civil and Political Rights ("ICCPR") and the Convention of the Rights of the Child ("CRC"), and customary international law. (Docket # 1, at 13–14). Because only the ICCPR has been ratified by the United States, it is the only binding treaty at issue in this case.[3] As statutes and treaties are the supreme law of the land, they have the same legal effect under federal law. *Breard v. Greene*, 523 U.S. 371, 376, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998); *U.S. v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir.2001). However, as a general rule, international treaties do not create rights that are privately enforceable in federal courts; rather they depend for the enforcement of their provisions on the interest and honor of the governments which are parties to it. *Emuegbunam*, 268 F.3d at 389; *U.S. v. Page*, 232 F.3d 536, 540 (6th Cir.2000). Courts therefore "presume that the rights created by an international treaty belong to a state and that a private individual cannot enforce them." *Emuegbunam*, 268 F.3d at 389. Nevertheless, treaties can create individually enforceable rights where the treaty includes express language providing for particular judicial remedies or where it creates fundamental rights on a par with those protected by the U.S. Constitution. *Id.* at 390.

■ In this case, the ICCPR does not contain express language providing for particular judicial remedies. The general language of the treaty relied on by Mr. Naoum does not provide any indication that it was "intended to be self-executing or to create private rights of action in the domestic courts of the signatory countries, in the absence of further domestic legislative action." *Huynh Thi Anh v. Levi*, 586 F.2d 625, 629 (6th Cir.1978). In fact, the treaty itself explicitly states that

> Where not already provided for by existing legislative or other measures, each State Party to the present Covenant undertakes to take the necessary steps, in accordance with its constitutional processes and with the provisions of the present Covenant, to adopt such laws or

---

**3.** The ICCPR became the law of the United States on 8 September 1992. *See* ICCPR, Dec. 19, 1966, 999 U.N.T.S. 171 (entered into force Mar. 23, 1976, entered into force for the United States Sept. 8, 1992). The CRC was signed by the United States on 16 February 1995, but it has not yet been ratified by the United States. *See* Status of Ratifications of the Principal Human Rights Treaties, Office of the United Nations High Commission for Human Rights (as of November 2003).

other measures as may be necessary to give effect to the rights recognized in the present Covenant.

ICCPR, Article 2, ¶2. In addition to the plain language of the treaty, Congress itself has made evident that the ICCPR provisions are not self-executing. *Maria v. McElroy,* 68 F.Supp.2d 206, 231–32 (E.D.N.Y.1999) (citing 138 Cong. Rec. S4784 (daily ed. Apr. 2, 1992)).[4] Moreover, the particular treaty provisions cited by Mr. Naoum are quite similar in essence to Article 16 of the United Nations Declaration of Human Rights [5] which the Sixth Circuit expressly determined did not create a private right of action. *Id.* Accordingly, Mr. Naoum may not invoke provisions of the ICCPR to prevent his deportation.

 Mr. Naoum also contends that his deportation would violate customary international law of human rights. The Supreme Court, in *The Paquete Habana,* concluded that where there was no treaty, and no controlling executive or legislative act or judicial decision, courts must resort "to the customs and usages of civilized nations." 175 U.S. 677, 700, 20 S.Ct. 290, 44 L.Ed. 320 (1900). Customary international law is also an important tool of statutory construction as "an act of congress ought never be construed to violate the law of nations if any other possible construction remains." *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 814–15, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (quoting *Murray v. Schooner Charming Betsy,* 6 U.S. 64, 118, 2 Cranch 64, 2 L.Ed. 208 (1804)). Though it has constitutional authority to do so, Congress is generally presumed not to have acted in violation of customary international law. *Id.* at 815, 113 S.Ct. 2891. Whether or not customary international law may be used by individuals to assert rights against state or private actors is a somewhat unsettled proposition. The Sixth Circuit, in *Buell v. Mitchell,* held that

> the determination of whether customary international law prevents a State from carrying out the death penalty, when the State otherwise is acting in full compliance with the Constitution, is a question that is reserved to the executive and legislative branches of the United States government, as it [is] their constitutional role to determine the extent of this country's international obligations and how best to carry them out.

274 F.3d 337, 375–76 (2001). However, in *Buell,* the Sixth Circuit expressly limited its holding to the context of the case stating that it took "no position on the question of the role of federal courts to apply customary international law as federal law in other contexts, a subject of recent lively academic debate." *Id.* at 376, n. 10. Moreover, in relatively contemporaneous case, the Sixth Circuit considered the merits of a petitioner's claim that the death penalty violated customary international law, but ultimately rejected it. *Coleman v. Mitchell,* 268 F.3d 417, 443, n. 12 (6th Cir.2001).

---

**4.** The court in *Maria* considered the ICCPR in analyzing whether a particular provision of AEDPA applied retroactively but explicitly concluded that the treaty itself did not create a private right of action. 68 F.Supp.2d at 234. *Beharry v. Reno,* another case cited by Mr. Naoum, likewise used the principles articulated in the ICCPR and customary international law in determining that an aggravated felon with seven years residence is entitled to an extreme hardship hearing under Section 212(h) of the INA. 183 F.Supp.2d 584, 595–605 (E.D.N.Y.2002). However, it also recognized that the statute, construed in conformity with international law, only entitled the petitioner "to a hearing at which a broad discretion to exclude may be exercised by the INS." *Id.* at 605.

**5.** Article 16 provides that "the family is the foundation of society and entitled to protection."

■ This Court need not resolve the extent to which customary international law is embodied in federal law because Mr. Naoum has failed to allege any violations of international law by the government. Assuming that ICCPR and CRC incorporates norms of customary international law as proposed by Mr. Naoum, these treaties express the following relevant principles: an alien shall "be allowed to submit the reasons against his expulsion" (Article 13 of the ICCPR); "No one shall be subjected to arbitrary or unlawful interference with his ... family" (Article 17 of the ICCPR); "The family is the natural and fundamental group unit of society and is entitled to protection by society and the State" (Article 23 of the ICCPR); "in all actions concerning children ... the best interests of the child shall be a primary consideration" (Article 3 of the CRC); and a child shall have "as far as possible, the right to know and be cared for by his or her parents" ("Article 7 of the CRC").

The above provisions do not prohibit the deportation of alien parents of citizen children, and the government, in this case, did nothing to violate any of these general principles. Mr. Naoum was allowed to submit his reasons against deportation. After giving consideration to Mr. Naoum's long residence in this country and the citizenship of his wife and children, the Immigration Judge ultimately determined these factors were outweighed by significant and serious negative factors. Such a reasoned decision is entirely consistent with principles of customary international law.

## C. Mr. Naoum's Citizenship Status

■ Mr. Naoum also claims that he cannot be removed because he is a United States citizen. During his deportation proceedings, Mr. Naoum not only failed to raise this issue, but he admitted that he was not a citizen. Mr. Naoum now claims that he became a citizen when his father Tanios Naoum became a naturalized citizen on 30 August 1974. In accordance with 8 U.S.C. § 1432(a)(1) and (4), a child born outside the United States of alien parents automatically becomes a citizen upon the naturalization of both living parents if such naturalization occurs before the child turns 18. While Mr. Naoum's father was naturalized when he was under 18, his mother did not become a citizen until "a few years prior" to the 15 February 2002 hearing, well after Mr. Naoum turned 18. (Docket 7, Ex. N, at 81). Mr. Naoum therefore fails to state a supportable claim for citizenship.[6]

## III. CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is dismissed due to the lack of jurisdiction and its failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.

---

**6.** The Court recognizes the existence of some unsettled issues regarding whether Mr. Naoum failed to exhaust his administrative remedies and whether courts can exercise their habeas jurisdiction to resolve citizenship questions. Usually, individuals subject to removal assert citizenship as a defense to deportation on direct review pursuant to 8 U.S.C. § 1252(5). However, the applicable transitional rules may prohibit direct review in this case as Mr. Naoum is "deportable by reason of having committed a criminal offense in ... section 241(a)(2)(A)(iii)." 8 U.S.C. § 1101, note. Because of this jurisdictional dilemma and the fundamental importance of citizenship, this Court exercises its habeas jurisdiction to ensure the consideration of the merits of Mr. Naoum's citizenship claims.

## JUDGMENT ENTRY

The Court, having contemporaneously entered its memorandum of opinion and order, hereby dismisses petitioners' petition for a writ of habeas corpus.

IT IS SO ORDERED.